CONFIDENTIAL - AEO

1
Tiffany Kim Sung (State Bar No. 323077)
tsung@foley.com
2
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
3
Los Angeles, California 90071-2411
Telephone:   213-972-4500
4
Facsimile:   213-486-0065
Jeanne M. Gills (*pro hac vice*)
5
jmgills@foley.com
321 North Clark Street, Suite 3000
6
Chicago, Illinois 60654
Telephone: 312-832-4500
7
Cynthia Rigsby (*pro hac vice*)
crigsby@foley.com
8
Kelsey C. Boehm (*pro hac vice*)
kboehm@foley.com
9
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
10
Telephone: 414-297-5580

11
John F. Olsen
jolsen@fiplawgroup.com
12
FERDINAND IP, LLP
2500 Broadway, Building F, Suite F-125
13
Santa Monica, California 90404
Telephone: 858-412-4515
14
Edmund J. Ferdinand, III (*pro hac vice*)
jferdinand@fiplawgroup.com
15
Alexander Malbin (*pro hac vice*)
amalbin@fiplawgroup.com
16
450 Seventh Avenue, Suite 1300
New York, New York 10123
17
Telephone: 212-220-0523

18
Attorneys for FASHION NOVA, INC.

19
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

20

21

| | |
|---|---|
| 22  GIANNI VERSACE S.R.L., | Case No:  2:19-cv-10074-PA-RAO |
| 23      Plaintiff, | **REDACTED DEFENDANT'S AMENDED JOINT MOTION *IN LIMINE* NO. 4 TO PRECLUDE JAMES DONOHUE'S DAMAGES ANALYSIS AND OPINION** |
| 24      v. | |
| 25  FASHION NOVA, INC. | |
| 26      Defendant. | Hearing: TBD |
| 27 | Trial Date: TBD |
| 28 | District Judge: Percy Anderson |

CONFIDENTIAL - AEO

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on whatever date is set by the Court following its October 19, 2020 (Dkt. 153),  or as soon thereafter as this may be heard by the Honorable Percy Anderson, United States District Judge for the Central District of California, located at 350 W. 1st Street, Courtroom 9A, Los Angeles, CA 90012, Fashion Nova, Inc. will, and hereby does, move, pursuant to Federal Rules of Civil Procedure 26(a), 26(e), and 37(c)(1), *in limine* for an order to exclude Gianni Versace S.R.L.'s ("Versace") damages expert's (James Donohue) actual damages analysis and opinions.

This Motion is made following the conference of counsel conducted pursuant to Local Rule 7-3, which took place on September 11, 2020.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Reply in support thereof, the Declaration of Jeanne M. Gills filed concurrently herewith, all other pleadings and the record filed in this action, all other matters of which this Court may take judicial notice, and such other evidence and argument as may be presented to the Court.  This joint also includes Versace's Opposition to the Motion and the Declaration of Patrick Somers in support.

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

DATED:  October 22, 2020              KENDALL BRILL & KELLY LLP


                                     By:    _/s/ Patrick J. Somers_____
                                            Patrick J. Somers
                                            Attorneys for Plaintiff and Counter-Defendant
                                            Gianni Versace S.r.l.


DATED:  October 22, 2020              FOLEY & LARDNER LLP


                                     By:    _/s/ Jeanne M. Gills_____
                                            Jeanne M. Gills
                                            Attorneys for Defendant and Counter-
                                            Claimant Fashion Nova, Inc.

CONFIDENTIAL - AEO

Fashion Nova, Inc. ("Fashion Nova") and Plaintiff Gianni Versace S.R.L. ("Versace") respectfully submit this joint motion *in limine* to exclude James Donohue's actual damages analysis and opinion (*see* Ex. 14[1]) in its entirety.

## Fashion Nova's Memorandum of Points and Authorities

James Donohue's opinion regarding actual damages from Fashion Nova's alleged infringing activities based on hypothetical lost licensee fees should be excluded because it is unduly speculative, predicated on flawed methodology, disregards the facts of the record of this case, and, as a whole, fails to establish a sufficiently reliable basis to determine that his calculation reflects Versace's actual damages in lost licensing fees. His opinions also fail the "red-face" test on the basis that his damages theory amounts to damages that are 700% of Fashion Nova's total profits on all accused garments and are in the absence of evidence that Fashion Nova ever has or would enter into minimal royalty guarantees (at all), let alone of the magnitude used in Donohue's so-called benchmark agreements. This is especially true given Fashion Nova's business model, the *de minimis* percentage (.0007%) of garments accused vs. Fashion Nova's total 200K offerings, and the average accused garment price points ($10-$50).

In the Ninth Circuit, hypothetical-license damages based on a reasonable royalty may be awarded for copyright and trademark infringement.[2] "To calculate the 'market value' of the injury to the plaintiff based on a hypothetical-license theory, we look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" *Oracle*, 765 F.3d at 1087, *quoting Wall Data Inc. v. L.A. Cnty. Sherriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006). "Reasonable royalty damages 'must be established with reasonable certainty' and thus damages that are remote or speculative should be denied." *Marketquest Group, Inc. v. BIC Corp.*, 316 F.Supp.3d 1234, 1300 (S.D. Cal.

---

[1] Exhibits referenced herein are attached to Fashion Nova's supporting Declaration.
[2] *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014), *citing Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Quia Corp. v. Mattel, Inc.*, No C 10-1902 JF (HRL), 2011 WL 2749576, *6 (N.D. Cal. Jul 14, 2011).

CONFIDENTIAL - AEO

2018), *quoting Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *see also Jarvis v. K2 Inc.*, 486 F.3d 526, 533-34 (9th Cir. 2007) ("Excessively speculative claims of damages are to be rejected[.]")

In support of his opinion, Donohue relies on only two license agreements entered into by Versace over six years prior to Fashion Nova's alleged infringing activity.  (Ex. 14, Donohue ¶¶ 8, 49.)   Donohue does not rely on any prior license entered into by Fashion Nova, or any prior licensing history or negotiation between Versace and Fashion Nova.  (*See id.*)  Donohue's reliance on no past Fashion Nova licenses and only two past Versace licenses—particularly in light of Donohue's admission that Versace's licensing activities "have been limited" (*id.* ¶ 49)[3] and recognition of the parties' vastly disparate market positions and price points (*see, e.g., id.* ¶¶ 13, 19, 36, 47)[4]—shows that Donohue's analysis is unduly speculative and unreliable.   In particular, it considers an unreasonably narrow universe of prior licensing, and fails to give any consideration to what Fashion Nova would have paid as a willing licensee, instead improperly giving sole consideration to what Versace would have accepted.   *Jarvis*, 486 F.3d at 533-34 ("The question is not what the owner would have charged, but rather what is the fair market value."); *see also Trell v. Marlee Electronics Corp.*, 912 F.2d 1433, 1446 (Fed. Cir. 1990) (vacating and remanding reasonable-royalty damages based on one prior license agreement by plaintiff).

Donohue's analysis is also unduly speculative as it lacks any facts or evidence to show that Versace would have entered into any similar license at the time of the start of Fashion Nova's alleged infringement, or is presently engaged in any licensing activities

---

[3] Donohue also represents that he "understand[s] that Versace would not have been willing to voluntarily enter into a license agreement with Fashion Nova" (Ex. 14, Donohue ¶ 44), further indicating the wholly subjective, speculative nature of his hypothetical-license analysis.

[4] *See Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F.Supp.2d 1245, 1255 (S.D. Cal. 2013), (excluding expert's lost profits opinion where report "lacks any indication that he considered that this case involves the highly competitive fashion marketplace.  His opinion is not based on any evidence of direct competition between the retail Defendant, which operates small, Western-style stores, and Brighton, which owns upscale boutiques and sells to high-end department stores") (citation omitted).

2

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

for products comparable to Fashion Nova's accused products—which is conspicuously absent given the apparent years-long gap since the Versace entered into its only license covering the North American territory. *Quia Corp. v. Mattel, Inc.*, No C 10-1902 JF (HRL), 2011 WL 2749576, *6 (N.D. Cal. Jul 14, 2011) ("Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis necessarily is speculation ... Plaintiff's claim that it 'likely' would license its mark 'at some point in the future,' is insufficient as a matter of law to support a claim" reasonable royalty damages).

In addition, Donohue's analysis is unduly speculative as it presents no evidence or facts indicating that the royalty terms of a hypothetical license with Fashion Nova would be the same or similar to Versace's licensing terms from many years prior. This compels the conclusion that the hypothetical Fashion Nova license is unduly speculative as relying on Versace's years-past market position and licensing activities, rather than the time of the commencement of Fashion Nova's alleged infringement. *AAA Flag & Banner Mfg. Co. v. Flynn Signs and Graphics, Inc.*, No. CV 09-2053 ODW (VBKx), 2010 WL 11463632, *3 (C.D. Cal. Mar. 15, 2010) (licensing relevant to actual damages must reflect "market value at the time of the alleged infringement in this case"), *citing Frank Music Corp. v. Metro-Goldwyn-Mater, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985); *Juicy Couture Inc. v. L'Oreal USA, Inc.*, No. 04 CIV 7203(DLC), 2006 WL 1359955, *4 (S.D.N.Y. May 18 2006) (expert's hypothetical negotiation of license "suffers from a significant factual deficiency" where it assumed negotiation timeframe four years prior to date of infringing use); *see also Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1090 (9th Cir. 2014); *Jarvis*, 486 F.3d at 534 (lost-license-fee actual damages based on "the hypothetical time of sale").

Similarly, Donohue's hypothetical license analysis should be excluded because it is based solely on these inapposite licenses, which improperly contemplate a far broader scope of use of Versace's Asserted IP than Fashion Nova's actual allegedly-infringing

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

use.[5]    For example, the H&M license granted use of a "bundle" of Versace IP in connection with the marketing and sales of licensed products under a mutual Versace and H&M label, "Versace For H&M", and Versace provided H&M with 156 different product designs. (Ex. 14, Donohue ¶¶ 38, 51, Figure 11.) Similarly, the Swinger license permitted marketing and sales of the licensed products under the "Versace Jeans Couture" and "Versace Versus" brands," and included hundreds of product designs. (*Id.* ¶¶ 38, 55, Figure 11.) In contrast, Fashion Nova's alleged infringements include a limited universe of Versace IP and importantly do not involve the use of the VERSACE word mark on the actual products, tags, or labels or in their active and visible marketing. Further, the H&M and Swinger licenses also involved ███████████████ ███████████████ that are not present in this hypothetical framework. (Ex. 15, Buss Dep. Tr. at 250:2-24, 254:17-255:1; Ex. 16, Buss Rebuttal at p. 13.)

Separately, Donohue's analysis is fatally flawed by its contention that a hypothetical license between Versace and Fashion Nova would include a guaranteed annual minimum royalty of $3,100,000, leading to his conclusion of $9,300,000 in total lost royalties for the three-year term of his hypothetical license. (Ex. 14, Donohue ¶ 12).[6] Such an award is unreasonable, unduly speculative and divorced from the facts of the

---

[5] *See, e.g., Marshall & Swift/Boeckh, LLC v. URS Corp.*, No. CV 08-04375 GAF (SSx), 2012 WL 12964282 at *2 (C.D. Cal. Feb. 2012) ("under controlling Ninth Circuit law [defendant] cannot be forced to pay for what it did not take, and any licensing fee for what it did take must be based on objective evidence as to reasonable value of the misappropriated data"); *Country Road Music, Inc. v MP3.com, Inc.*, 279 F.Supp.2d 325, 330-32 (S.D.N.Y. 2003) (lost-license-fee actual damages looks to "the result of 'negotiation between a willing buyer and a willing seller,' for a license for 'the use the infringer made,' not 'the highest use for which plaintiff might license'") (emphasis in original), *quoting On Davis v. The Gap, Inc.*, 246 F.3d 152, at 166, 172, n.5. (2d Cir. 2001); *Contender Partners, LLC v. Azteca Int'l Corp.*, 2009 WL 10670472, *17 (C.D. Cal. Jul. 22, 2009) (rejecting evidence of reasonable royalty based on inapposite benchmark providing licensee different bundle of intellectual property rights).
[6] Fashion Nova's counsel has been unable to locate a single decision in the Ninth Circuit allowing for a hypothetical guaranteed-minimum royalty to be recovered as reasonable-royalty damages. (Decl. ¶_13.) Fashion Nova raised the lack of authority during the parties' meet and confer and Versace has not identified any legal authority supporting such an award. *Id.* Putting aside the lack of legal authority permitting this type of authority, Donohue's analysis on this point is entirely speculative. *Oracle*, 765 F.3d at 1088; *Jarvis*, 486 F.3d at 534.

CONFIDENTIAL - AEO

case as Fashion Nova has not engaged in continuous sales and marketing of the accused products for a three-year term as this hypothetical license contemplates. (Ex. 16, Buss Rebuttal Schedules 2a, 2b.) Rather, the vast majority of Fashion Nova's allegedly-infringing products were sold for far less than three years, many for one year or less. (*Id.*)  In addition, this annual minimum royalty would greatly exceed not only profits, but also total sales figures of all accused garments.  (*Id.* at pp. 4, 6-7.)

In the end, Donohue's actual damages analysis amounts to an improper effort to obtain a "pie-in-the-sky award[7] that has been repeatedly cautioned against in this Circuit and should be excluded accordingly.  *Marshall & Swift/Boeckh*, 2012 WL 12964282, *1 (denying motion to reconsider exclusion of expert opinion on reasonable licensing fee where his "approach resulted in a suggested licensing fee ludicrously out of proportion to any reasonable value of the allegedly misappropriated data"), *citing Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004).

---

[7] Donohue's hypothetical lost license fees reflects approximately 450-700% of Fashion Nova's profits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on all accused products, which is in conspicuous contrast to the royalty rates under the benchmarks licenses that Donohue relies on. Compare Decl. Ex. 16, Buss pp. 7, 15, Ex. 19_Donohue Rebuttal ¶ 36) *with* Decl. Ex. 14, Donohue ¶ 53 ▮▮▮▮▮▮▮▮▮▮▮▮▮ and Decl. Ex. 14, Donohue ¶ 58 ▮▮▮▮▮▮▮▮▮▮▮▮.

5

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

## Versace's Contentions and Memorandum of Points and Authorities

Fashion Nova's criticisms of Versace's damages expert James Donohue's reasonable royalty analysis stem from a fundamental misunderstanding of what a plaintiff is required to show in a hypothetical license negotiation, or merely concern disagreements with Donohue's evidentiary choices and conclusions, which "go to the *weight*, not the admissibility" of the testimony. *Kennedy* v. *Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998); *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Fashion Nova can advance these criticisms through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. Either way, its motion to exclude Donohue's analysis under *Daubert* is meritless and should be denied.

## I.    OVERVIEW OF DONOHUE'S HYPOTHETICAL LICENSE ANALYSIS

Donohue utilized a hypothetical license analysis as a proxy to measure actual damage to Versace from Fashion Nova's infringement. To conduct this analysis, Donohue relied on two real-world benchmarks covering the IP at issue (collectively, the "Versace Benchmarks"), which Versace entered into with (a) fast-fashion retailer H&M Hennes & Mauritz AB ("H&M"), and (b) Swinger International S.p.a. ("Swinger"), an Italian apparel manufacturer and marketer. Ex. 14 ¶¶ 50–58. The Versace Benchmarks licensed the use of Versace trademarks and designs, which included many of the very copyrights and trademarks Fashion Nova has infringed,[8] across a wide range of apparel products. *Id.* ¶¶ 51, 55, 60 fig.11. Both licensees sold products at much lower price points than Versace's own apparel. *Id.* ¶ 60 fig.11. And both licenses specified royalties, including guaranteed minimum royalties. *Id.* ¶¶ 53, 58.

Donohue compared the terms of the Versace Benchmarks against Fashion Nova's infringement to identify the likely terms of a hypothetical license for the infringed IP. *See id.* ¶¶ 60 fig.11, 61–68. Donohue's analysis included a comparison of, among other

---

[8] These include the Baroque, Jungle and Pop Hearts prints, along with the Versace trademark and Greca design mark. *Id.* ¶¶ 51, 55.

CONFIDENTIAL - AEO

things, the scope of the IP licensed, Versace's right to oversee design and quality control, geographical scope, product price points and inflation over time. *Id.*

    Ultimately, Donohue ███████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████ *Id.* ¶¶ 69–73.  Donohue explained his decision to apply the guaranteed royalty provisions as "the minimum price of entry for Fashion Nova's access to the Versace intellectual property." *Id.* ¶ 70.  He concluded that the Versace Benchmarks' guaranteed royalties reflect the compensation a willing licensor of Versace's valuable brand and IP would demand for access, given the resultant diminishment of exclusivity and risk or reduction to the brand's value.[9] *Id.* ¶ 40.

## II.   ARGUMENT

### A.   Donohue's Hypothetical License Analysis Relies on Gold-Standard Evidence: Actual License Agreements for the at-Issue IP

    As Fashion Nova concedes, reasonable royalties based on a hypothetical license between a copyright or trademark owner and an infringer are an accepted way to calculate damages based on the actual harm to the IP owner, so long as the amount is not based on "undue speculation." *See, e.g.*, *Polar Bear Prods.* v. *Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004).  The Ninth Circuit has held that a plaintiff's "history of granting comparable licenses" and "evidence of 'benchmark' licenses"—the exact forms of evidence on which Donohue's analysis relies—are the best evidence to support a lost hypothetical license award.  *Williams* v. *Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018) (upholding hypothetical license award based on *third-party* benchmarks alone).

    Fashion Nova first repeatedly argues that Donohue's thorough analysis is unduly speculative, but the cases it cites are not remotely on point.  *See* Mot. 1–2.  In *Oracle Corp.* v. *SAP AG*, Oracle had "no history of granting similar licenses" and had "not

---

[9]  As Donohue noted, Versace's brand and intellectual property are extremely valuable: in late 2018, Versace's goodwill, customer relationships and brand were valued at $2 billion in total, of which $900 million was attributed to Versace's brand alone.  *Id.* ¶ 10.

7
DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

presented evidence of 'benchmark' licenses in the industry approximating the hypothetical license in question." 765 F.3d 1081, 1093 (9th Cir. 2014). In *Quia Corp.* v. *Mattel, Inc.*, the *only* evidence Quia presented to support its request for reasonable royalties was testimony that it would "likely" license its mark "at some point in the future." 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011). And in *Marketquest Group, Inc.* v. *BIC Corp.*, Marketquest presented no evidence that it had ever licensed or had any intention of licensing its marks, and it failed to present *any* other evidence to support a reasonable royalty award. 316 F. Supp. 3d 1234, 1300–01 (S.D. Cal. 2018).[10] In contrast to Donohue's thorough analysis described above, Fashion Nova's cited cases involved situations where plaintiffs presented little to no factual basis to support their analyses. That is not the case here, where—as demonstrated by the Versace Benchmarks—real-world licenses actually exist with third parties to license the use of Versace's trademarks and designs.

## B.   Fashion Nova Misconstrues the Ninth Circuit's Test for Hypothetical Licensing Negotiations

Although Fashion Nova correctly *identifies* the hypothetical license standard as "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work," Mot. 1 (quoting *Oracle*, 765 F.3d at 1087 (*quoting Wall Data*, 447 F.3d at 786)), none of its arguments conform to the standard or the cases applying it. Specifically, Fashion Nova contends that Donohue failed to conduct a proper hypothetical licensing analysis because he (1) did not consider Fashion Nova's licensing history, (2) allegedly gave "sole consideration to what Versace would have accepted," and (3) did not show that Versace would have licensed Fashion Nova. Mot. 2–3. But each of these arguments fundamentally misconstrues the standard for a hypothetical license.

---

[10] In Fashion Nova's other citations regarding "undue speculation," courts upheld the challenged reasonable royalty awards. *Wall Data Inc.* v. *L.A. County Sheriff's Dept.*, 447 F.3d 769 at 786–87; *Jarvis* v. *K2 Inc.*, 486 F.3d 526, 533–35 (9th Cir. 2007).

8

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

*First*, Donohue was not required to consider "any prior license entered into by Fashion Nova, or any prior licensing history or negotiation between Versace and Fashion Nova." Mot. 2. The hypothetical license standard asks what a *willing buyer* would pay for the infringed intellectual property—not what a flagrant infringer like Fashion Nova would pay. *See adidas Am., Inc.* v. *Payless Shoesource, Inc.*, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) ("[W]hat the infringer might have preferred to pay is not the test for damages."); *see also Polar Bear*, 384 F.3d at 709 ("Having taken the copyrighted material, [defendant] is in no better position to haggle over the license fee than an ordinary thief."). The Versace Benchmarks are far better evidence for what a willing buyer might pay than Fashion Nova's past licenses for third-party IP because they show what multiple willing buyers have in fact paid for the at-issue IP. In any event, Donohue *did* evaluate Fashion Nova's negotiating position as part of his analysis. *See* Ex. 14 ¶¶ 46–47. This effort was hindered by Fashion Nova's refusal to produce its license agreements—the very agreements Fashion Nova now criticizes Donohue for failing to analyze, *see id.* ¶ 47 n.88; *see also* Buss Dep. Tr., Ex. 15, at 30:4–33:15.

*Second*, and for similar reasons, Fashion Nova's claim that Donohue's evaluation gives "sole consideration to what Versace would have accepted," Mot. 2, is simply false. The Versace Benchmarks are *not* simply Versace's desired rates for its IP untethered to actual market value. They are *actual, executed licenses* showing what a willing seller (Versace) and multiple willing buyers (H&M and Swinger) have paid for that IP.

*Finally*, Donohue was not required to show, as Fashion Nova contends, that Versace "would have entered into any similar license at the time of the start of Fashion Nova's alleged infringement, or is presently engaged in any licensing activities in any licensing activities comparable to Fashion Nova's accused products." *See* Mot. 2–3 & n.3. Any such argument was expressly rejected in *Oracle v. SAP*:

> We have never required a plaintiff in a copyright infringement case to show that it would have licensed the infringed material. We decline to impose such a requirement now. A copyright holder has the right to refuse to license its work and should not be penalized for exercising that right.

CONFIDENTIAL - AEO

765 F.3d at 1087; *see also Gucci Am., Inc.* v. *Guess?, Inc.*, 858 F. Supp. 2d 250, 255–56 (S.D.N.Y. 2012) (lack of licensing relationship between parties and Gucci's admission that it would not have licensed Guess did not justify exclusion of expert).  Moreover, as Donohue noted, the Swinger license was in fact extended in 2018, *after* Fashion Nova's campaign of infringement began.  *Id.* ¶¶ 58, 60 fig.11.  Thus, to the extent Fashion Nova seeks to suggest that Versace is no longer engaged in licensing its IP, that claim is wrong.

## C. **Fashion Nova's Remaining Criticisms Are Meritless and Go to Weight, Not Admissibility**

Fashion Nova's remaining criticisms of Donohue's analysis do not justify exclusion under Rule 702.  *Kennedy*, 161 F.3d at 1230–31; *Daubert*, 509 U.S. at 595.

1.     Fashion Nova contends that Donohue should have considered a broader range of benchmarks than he did.  Mot. 2.  But this criticism goes to weight, not admissibility.  *See Gray* v. *Perry*, 2019 WL 2992007, *19–20 (C.D. Cal. July 5, 2019) (admitting testimony of expert who whose hypothetical license analysis allegedly "fail[ed] to consider additional, highly relevant evidence of prior transactions").[11] Fashion Nova's further suggestion that the "parties' vastly disparate market positions and price points" compels the review of additional licenses ignores the fact that Donohue's analysis directly considered the market positions and price points of Fashion Nova, H&M and Swinger (each of which sells apparel at much lower price points than Versace).  Ex. 14 ¶ 67; *see also id.* ¶¶ 19, 46–47, 50, 54, 60 fig.11.

2.     Fashion Nova next criticizes Donohue for allegedly failing to present

---

[11] *Trell* v. *Marlee Electrics Corp.*, 912 F.2d 1443 (Fed. Cir. 1990), does not support Fashion Nova's position because it does not address expert testimony, it is an out-of-circuit decision, and Fashion Nova misreads the case.  In *Trell*, the Federal Circuit noted that a party can demonstrate reasonable *patent* royalties in one of two ways: an "established royalty, if there is one" or "a hypothetical royalty."  *Id.* at 1445.  The court held that a single benchmark license is insufficient to prove an *established* royalty and concluded that the district court had failed to conduct a hypothetical royalty analysis because its analysis did not consider factors such as the scope of the IP or the exclusivity of the license, *id.* at 1446—both of which Donohue considered in his analysis, Ex. 14 ¶¶ 60–73.  The court did *not* preclude a hypothetical license analysis based on a single benchmark, let alone two.  *Trell*, 912 F.2d at 1445–46.

CONFIDENTIAL - AEO

"evidence or facts indicating that the royalty terms of a hypothetical license with Fashion Nova would be the same or similar to Versace's licensing terms from many years prior." Mot. 3. But, this is fodder for cross-examination, not exclusion. Indeed, not a single authority cited by Fashion Nova even suggests that an expert may not consider benchmarks predating the hypothetical infringement.[12] And, in any event, Donohue's analysis *does* address the fact that a hypothetical Fashion Nova license would have been executed after the Versace Benchmarks, *see* Ex. 14 ¶ 60 fig.11, resulting in ██████ ████████████████ *see id.* ¶ 68. Moreover, the Swinger license *remains in effect* and was most recently extended (██████████████) after Fashion Nova's infringement began. *See id.* ¶¶ 58, 60 fig.11. Fashion Nova suggests no reason why the value of the Versace IP would have decreased significantly during the relevant period, *see* Mot. 3, and Fashion Nova's own damages expert *also* reviewed potential benchmarks dating back to the same timeframe as the Versace Benchmarks, *see* Ex. 16 Sch. 7.

3. Fashion Nova also argues that the Versace Benchmarks are "inapposite" to Fashion Nova's infringement of Versace's IP because they allegedly (a) contemplate a far broader scope of use than Fashion Nova's infringement, and (b) include "████ ████████████████████████████████." Mot. 4–5. But Donohue evaluated and addressed these precise questions, concluding (i) that the scopes of the Versace Benchmarks were similar to Fashion Nova's infringement, *see* Ex. 14 ¶¶ 51, 55,

---

[12] *AAA Flag & Banner Manufacturing Co.* v. *Flynn Signs & Graphics, Inc.*, concerned a license fee estimate "pull[ed] out of thin air" by a *non-expert* for "rights-managed images" (i.e., stock photos), which unlike the IP at issue here are "*typically licensed for a specific use and a limited duration*, with the *price varying based on the intended use*." 2010 WL 11463632, at *2–3, n.4 (C.D. Cal. Mar. 15, 2010) (emphasis added). *Frank Music Corp.* v. *Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 n.6 (9th Cir. 1985) and *Jarvis*, 486 F.3d at 534 (9th Cir. 2007) simply state the rule and do not address the relevance of past benchmarks. *Juicy Couture, Inc.* v. *L'Oreal USA, Inc.* addressed a situation where the proffered expert's hypothetical negotiations occurred four years before the date of infringement, 2006 WL 1359955, at *4 (S.D.N.Y May 18, 2006), whereas Donohue's analysis sets the correct timeframe for the hypothetical negotiations, *see* Ex. 14 ¶ 60 fig.11. And in *Oracle*, the court's analysis did not concern benchmarks and actually *departed* from the rule. 765 F.3d at 1090 ("*Although* we look to the expectations of the parties at the time of the hypothetical negotiation . . . ." (emphasis added)).

CONFIDENTIAL - AEO

1  60–61 & fig.11; Donohue Rebuttal Rpt., Ex. 19 ¶¶ 21–22 & fig.3,[13] and (ii) that under the

2  hypothetical license, Fashion Nova is receiving the benefit of ████████████████████

3  ████████████████████████. Ex. 19 ¶ 33. In any event, Fashion Nova's

4  criticisms go to Donohue's conclusions, not his methodology.[14]

5        4.    Finally, Fashion Nova argues that Donohue should not have incorporated

6  minimum royalties in his analysis because (a) the scope of its infringement is allegedly

7  narrower than the scope of use authorized in the Versace Benchmarks,[15] and (b) Fashion

8  Nova would have lost money under Donohue's hypothetical license. Mot. 1, 4–5. The

9  first claim restates Fashion Nova's scope argument, discussed above, which goes to

10  weight, not admissibility. The second claim fares no better.

11        That Fashion Nova would have lost money by licensing Versace's IP rather than

12  stealing it does not warrant the exclusion of Donohue's testimony. "There is no rule that

13  a royalty be no higher than the infringer's net profit margin." *adidas*, 2008 WL 4279812,

14  at *12 ("Although the jury's royalty award would have resulted in a loss to Payless at the

15  current price point, this does not make the royalty unreasonable."); *see also Polar Bear*,

16  384 F.3d at 709 ("Having taken the copyrighted material, [defendant] is in no better

17  position to haggle over the license fee than an ordinary thief . . . .").

18
19  [13] As Donohue notes, the H&M license included designs featuring the "Barocco prints,
    the Jungle print, the Pop Hearts print, and the Greca design mark"—all of which are at
20  issue here. Ex. 14 ¶ 51. And the Swinger license included rights to certain Versace
    trademarks as well as "Versace's iconic Barocco print." *Id.* ¶ 55.
21  [14] Fashion Nova's authorities, Mot. 4 n.5, are once again inapposite and irrelevant.
    *Marshall & Swift/Boeckh, LLC* v. *URS Corp.* concerned a benchmark of an "*elaborate,*
22  *non-infringed computer program* used for a different purpose under different
    circumstances than the RSDE at issue," which consisted of a "*single page of data.*" 2012
23  WL 12964282, at *1–2 (C.D. Cal. Feb. 22, 2012) (emphasis added). *Country Road*
    *Music, Inc.* v. *MP3.com, Inc.* concerned a benchmark for a license that was orders of
24  magnitude different than the infringing use:  10 years vs. four months, exclusive vs.
    nonexclusive, permission to download local copies of music vs. a streaming-only
25  limitation, etc.  279 F. Supp. 2d 325, 331 (S.D.N.Y. Aug. 27, 2003). And *Contender*
    *Partners, LLC* v. *Azteca International Corp.* concerned a benchmark for licenses to
26  broadcast a copyrighted television show while the at-issue claim was for trademark
    infringement.  2009 WL 10670472, at *17 (C.D. Cal. July 22, 2009).
27  [15] Fashion Nova's citations to its own expert's damages report confirm Fashion Nova
    sold more than 130 different allegedly infringing products from 2018–2020 (the years in
28  which Donohue's hypothetical license would have been in effect) and that the number of
    infringing products has continued to increase. *See* Ex. 16 Schs. 2a, 2b.

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

Moreover, courts accept hypothetical license damage awards including upfront fees (*i.e.*, guaranteed minimum royalties) so long as they are based on substantial evidence. *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc.* v. *Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357–59 (Fed. Cir. 2012); *Third Wave Techs., Inc.* v. *Stratagene Corp.*, 405 F. Supp. 2d 991, 1009–1014 (W.D. Wis. 2005) (upholding reasonable royalty award including $5.3 million in upfront fees despite defendant's earning only $236,000 from infringing use). Donohue clearly explained his reasoning for including the guaranteed royalty structure from the Versace Benchmarks. Ex. 14 ¶¶ 40, 70 & n.138. That structure—which was paid by previous willing licensees and is a common feature of licenses in the apparel industry—represents the "minimum price of entry" to use Versace's valuable intellectual property, with the resultant risks to Versace's $900 million brand. *Id.* Disregarding these minimums would place Fashion Nova in a better position as an infringer than licensees who have complied with the law.

Fashion Nova seeks to avoid addressing Donohue's reasoning and analysis by inventing a "red-face" test (backed by no authority) and lifting "pie-in-the-sky" language from a clearly inapposite case.[16] Mot. 1, 5. But these distractions cannot obscure the fact that Fashion Nova fails to identify any *methodological* flaws in Donohue's analysis. Fashion Nova's complaints about the minimum royalties in the Versace Benchmarks and their application to a hypothetical licensing analysis go to Donohue's conclusions, not his methodology. *Kennedy*, 161 F.3d at 1230–31; *Daubert*, 509 U.S. at 595.

## III.  **CONCLUSION**

Versace respectfully requests that the Court deny Fashion Nova's Joint MIL No. 4.

---

[16] *See supra* note 15.

DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

## **Fashion Nova's Reply**

### A.    **Donohue's Opinion Should be Excluded.**

The H&M and Swinger licenses do not serve as appropriate benchmark licenses because they provide terms for a vastly different scope of license grant (and marketing partnership) compared to Fashion Nova's accused infringement.  *See supra* at 2-4. Versace wrongly argues that consideration of those licenses is appropriate because the award in *Williams v. Gaye* was upheld based on third party benchmarks alone.  However, closer review of *Williams v. Gaye* demonstrates that the expert opinion in *Williams* was based on industry standard, not third-party benchmarks alone.  895 F.3d at 1129 (opinion tethered damages to industry standard to determine range for market value of license); *see also Williams v. Bridgeport Music, Inc.*, No. 13cv06004JAKAGRX, 2015 WL 4479500, at *24 (C.D. Cal. July 14, 2015) (discussing admissibility of expert opinion guided by "industry standard").   Unlike in *Williams*, Donohue fails to tether his hypothetical license damages based on the H&M and Swinger licenses as reflecting industry standard.  Instead, he merely opines that:

> Versace has licensed bundles of similar intellectual property rights for use with apparel in non-luxury markets. These [] Previous Versace Licenses therefore provide compensation terms that can be used to benchmark the minimum price of entry for Fashion Nova's access to the Versace [IP].

(Ex. 14, Donohue ¶ 38.)   Noticeably absent from Donohue's analysis, but present in *Williams*, is evidence that the prior Versace licenses reflect industry standard.

Versace's attempt to distinguish Fashion Nova's case law misses the mark.  While Donohue's opinion relies on two prior licenses covering an entirely difference scope of activities, Versace points to no facts or evidence that Versace:  would have entered into any similar license when Fashion Nova's alleged infringement began; or is presently engaged in any licensing activities for products comparable to Fashion Nova's. Therefore, the *Oracle*, *Quia,* and *Marketquest* cases (*see supra*) support exclusion here.

CONFIDENTIAL - AEO

### B.    Fashion Nova Correctly Applies the Ninth Circuit Test.

Donohue's opinion warrants exclusion because it does not appropriately consider what a willing buyer would pay for use of the IP.  *Oracle*, 765 F.3d at 1089.  As the Court stated in *Oracle*:

> Fair market value in a voluntary licensing transaction between arms-length parties ordinarily lies somewhere between the two poles of cost to the seller and benefit to the buyer. That is, the seller will not ordinarily charge less for a license than its anticipated cost, and *the buyer will not ordinarily pay more for a license than its anticipated benefit*.

765 F.3d 1081, 1089 (emphasis supplied).  While a prior license or prior party negotiations are not essential, Donohue's analysis focuses solely on what Versace would have required Fashion Nova to pay, considering two inapposite licenses.  Donohue fails to consider the absence of any evidence that Fashion Nova (or any willing buyer) would have been willing to pay a 17% royalty rate with a $3.1MM annual guaranteed royalty minimum for use of the asserted IP.[17]

Moreover, Donahue points to no evidence that Fashion Nova would have had an "anticipated benefit" in excess of $9.3MM ($3.1MM per year for three years).  Indeed, the evidence suggests the opposite.  Fashion Nova's *total gross sales* on the accused products was only ███ (Ex. 16, Buss Rebuttal at 6).  That is ████ less that the total amount Donohue would have Fashion Nova pay to Versace and a ██ factor of Fashion Nova's total profits (*id.* at **7**).  Because Donohue cannot point to any evidence that Fashion Nova would have accepted a 17% royalty rate (██████████████████ ███████), or anticipated a benefit that would justify Fashion Nova paying *all of its total revenues plus another* ████ *more* in royalties to Versace, his opinion should be excluded.  *Marshall*, 2012 WL 12964282, at *1 (excluding excessive license damages

---

[17] Versace's suggestion that Fashion Nova is withholding relevant information regarding its own license agreements is disingenuous.  Relevant testimony reveals that such licenses relate to agreements with one artist and two celebrities, not luxury clothing designers such as Versace. (Ex. 15 at 30:4-33:15.)  Such agreements have no application to the instant circumstances.  The time for discovery disputes has past, and this is simply misdirection.

CONFIDENTIAL - AEO

since a party "cannot be forced to pay for what it did not take, and any licensing fee for what it did take must be based on objective evidence").

### C.    Issues with Donohue's Analysis Justify Exclusion.

Contrary to Versace's assertions, fundamental flaws in Donohue's analysis justify exclusion of his reasonable royalty opinion in its entirety.  Versace's wrongly argues that Donohue's failure to consider additional (comparable) benchmarks goes to weight and not admissibility where here Donohue's opinion is not sufficiently reliable to go to the jury.  *See DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1021, 1023-24 (S.D. Cal. 2011) (excluding expert's reliance on IP licenses not economically comparable to IP-in-suit); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4272870, at *10 (N.D. Cal. July 14, 2015) (excluding expert's use of non-comparable license as "insufficiently reliable to reach a jury").

Likewise, Versace is wrong that Donohue's reliance on agreements pre-dating the alleged infringement goes to weight, not admissibility.  Key to the reasonable royalty analysis is when the infringement began.  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. CV 17-189-LPS-CJB, 2019 WL 5310220, at *2 (D. Del. Oct. 21, 2019).  It is proper to exclude his hypothetical license based on an unsupported assumption that there was no change between the date of the benchmark and hypothetical licenses. *Id.*

Versace's argument regarding propriety of a guaranteed minimum royalties damages award too fails.  <u>None</u> of Versace's cited cases involve *guaranteed minimum royalties* , but rather upfront fee damages awards.  *See Transocean*, 699 F.3d at 1358; *Third Wave*, 405 F. Supp. 2d at 1012.  Versace thus cannot point to any authority justifying guaranteed minimum royalties.  Versace concedes (at 13) that upfront fees are only appropriate if "based on substantial evidence" demonstrating they are "commonly utilized in the industry."  Unlike in *Transocean* and *Third Wave*, there is no evidence here (*e.g.,* testimony) beyond the terms of Versace's prior licenses that Versace would have required guaranteed minimum royalties or that such are common in the industry.

CONFIDENTIAL - AEO

*See* Ex. 14.  Exclusion is proper where such an award is entirely speculative and lacks legal support.  Fashion Nova thus respectfully requests that the Court grant its MIL No. 4.

CONFIDENTIAL - AEO

Dated: October 22, 2020

/s/ Jeanne M. Gills
Tiffany K. Sung
**FOLEY & LARDNER LLP**
Tiffany Kim Sung (State Bar No. 323077)
tsung@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071-2411
Telephone:  213-972-4500
Facsimile:   213-486-0065

Jeanne M. Gills (*pro hac vice*)
jmgills@foley.com
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: 312-832-4500

Cynthia J. Rigsby (*pro hac vice*)
Email: crigsby@foley.com
Kelsey C. Boehm (*pro hac vice*)
Email: kboehm@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414-297-5580

John F. Olsen
jolsen@fiplawgroup.com
FERDINAND IP, LLP
2500 Broadway, Building F, Suite F-125
Santa Monica, California 90404
Telephone: 858-412-4515

Edmund J. Ferdinand, III (*pro hac vice*)
jferdinand@fiplawgroup.com
Alexander Malbin (*pro hac vice*)
amalbin@fiplawgroup.com
450 Seventh Avenue, Suite 1300
New York, New York 10123
Telephone: 212-220-0523


Attorneys for Fashion Nova, Inc.

KENDALL BRILL & KELLY LLP

/s/ Patrick S. Somers
Bert H. Deixler
bdeixler@kbkfirm.com
Patrick J. Somers
psomers@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
TELEPHONE: 310.556.2700

18
DEFENDANT'S MOTION IN LIMINE NO. 4

CONFIDENTIAL - AEO

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Andrew Gordon (admitted *pro hac vice*)
agordon@paulweiss.com
Lynn B. Bayard (admitted *pro hac vice*)
lbayard@paulweiss.com
Darren W. Johnson (admitted *pro hac vice*)
djohnson@paulweiss.com
Elana R. Beale (admitted *pro hac vice*)
ebeale@paulweiss.com
1285 Avenue of the Americas
New York, New York 10019
Telephone: 212.373.3000
Facsimile:  212.757.3990

*Attorneys for Plaintiff and Counter-Defendant Gianni Versace S.r.l.*

CONFIDENTIAL - AEO

## ATTESTATION UNDER LOCAL RULE 5-4.3.4

I, Jeanne M. Gills, am the ECF User whose ID and password are being used to file Fashion Nova Inc.'s Joint Motion in Limine to DEFENDANT'S JOINT MOTION *IN LIMINE* NO. 4 TO PRECLUDE JAMES DONOHUE'S DAMAGES ANALYSIS AND OPINION. In compliance with Local Rules 5-4.3.4(a)(2), I hereby attest that Patrick Somers has concurred in filing of this Motion as a joint submission and as to the legal arguments in Versace's Opposition.


DATED: October 22, 2020

/s/ Jeanne M. Gills
Jeanne M. Gills

CONFIDENTIAL - AEO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 22, 2020, I caused to be served the foregoing **DEFENDANT'S JOINT MOTION *IN LIMINE* NO. 4 TO PRECLUDE JAMES DONOHUE'S DAMAGES ANALYSIS AND OPINION** on counsel for Plaintiff listed below by email pursuant to agreement of the parties.

KENDALL BRILL & KELLY LLP
Bert H. Deixler (70614)
bdeixler@kbkfirm.com
Patrick J. Somers (318766)
psomers@kbkfirm.com
Amanda D. Barrow (313583)
abarrow@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Andrew Gordon (admitted pro hac vice)
agordon@paulweiss.com
Lynn B. Bayard (admitted pro hac vice)
lbayard@paulweiss.com
Darren W. Johnson (admitted pro hac vice)
djohnson@paulweiss.com
1285 Avenue of the Americas
New York, New York 10019
Telephone: 212.373.3000
Facsimile: 212.757.3990

/s/ Jeanne M. Gills